We have three argued cases this morning. The first is No. 18-1067, Blast Motion, Inc. v. Iancu. Mr. Argenti. Argenti? Yes, Your Honor. Good morning. Matt Argenti on behalf of Appellant Blast Motion. May it please the Court. The issues in this case all stem from terribly deficient IPR petitions. It's important to consider at the outset what those deficiencies look like. The petitioner didn't explain what the prior art was teaching in various embodiments and, in fact, didn't even acknowledge that there were various different embodiments. The petitioner lumped disparate aspects of disclosure together in string citations without explaining whether or how they related to each other. The petition lacked any discussion of rationale to combine. And the petition was so generally sloppy that the Board expressly refused to consider anything cited in the supporting materials but not in the petition itself. Because of this, once the Board decided to institute, it had no record upon which it could explain obviousness in a manner consistent with controlling law, and that's reflected in the decision. The patent claims at issue are directed to methods of capturing and analyzing motions. For example, in a sports performance context like analyzing a golf swing or baseball swing. The claims have two main components. One, a motion capture hardware element that captures motion data and transmits it wirelessly. And two, a mobile device that receives and analyzes that data and displays the associated information. In finding the patent claims obvious, the Board erred with respect to both of those two main components, each of which independently warrants remand. I'm going to address the display requirement first, which is a different order than what we talked about in the briefing. But I think there are undisputed issues that have been clarified in the briefing that are dispositive and merit remand. Do you think the claims require simultaneous display? No, that's not our position. Then what is your position? Our position is that prior art pretty clearly talks about being able to display both past swings and real-time swings. Our position is that the display does require display of two sets of information, which is the data that's previously recited in the claim as being collected, as well as separate previously stored data. And when you look to the Mahajan reference, there are a couple of issues. And one is that there's a lot of post-hoc rationalization going on. It's been a moving target as far as what the disclosure is exactly that's being relied on. And as I just mentioned, and as we pointed out— The Board is pretty clear that they talk about the parts of Mahajan that talk about you can either save the data or see it in real time. What's the matter with seeing that as a disclosure? Well, the Board misinterpreted that disclosure, and I don't think that was the Board's interpretation of the prior art or what the claims require. Because what the Board pointed to was displaying a single set of data, a single set of motion capture data, either in real time as you collect it and analyze it, or saving it and displaying it later. And that's not what the claims require. The claims require a display of two sets of data, both the currently collected and analyzed data that's recited earlier in the claim, as well as previously stored data, which is different— That seems to be an argument that has to be done simultaneously. I'm not following what you're saying. It's not going to a simultaneous display. But what it does require is that there have to be two sets of data. And displaying data now or displaying that same data later is not displaying two sets of data. Why isn't the Board's reference to, I think, is it paragraph 66 of Mahajan, which I think it referred to a handful of times, enough even if some other stuff the Board said would not be enough? Paragraph 66 of Mahajan, at best, describes collecting and storing data. It does not describe anything about the display of data. Well, it's 60—it talks about multiple swings, compilation of the data, or statistical number of golf swings. Exactly. So collecting, analyzing the data is not the same thing as displaying the data. What that paragraph doesn't say is anything like the display that's recited in our claims. Right, but a display system for multiple swings. Since multiple swings occur over a period of time, that sure sounds like at least two data packages. And the display system for that would seem to be a system for displaying that. Maybe not on a split screen, but you're not arguing for a simultaneous showing on a split screen, but that the display system has to be able to show two different data packages. Right. Why doesn't that say that? It doesn't say it because, again, there's a disconnect between the disclosure that refers to collecting and analyzing the data and separate disclosure that refers to displaying data. To the extent it talks about displaying data, it is not talking about, or at least it hasn't been explained, that it's talking about displaying the two sets of data as recited in the claims. So another thing I want to point out with respect to the analysis and the director's brief in particular, and even the board, is, again, that this has been a moving target all along. This is post hoc rationalization to the extent they're pointing to something and offering explanation that petitioner never offered in the petition. So unless there are any more questions on that particular issue, I just want to point out that it's undisputed that the board applied the incorrect claim construction. This is something that we argued in our opening brief and the director had no response to. So the fact that the board applied the wrong claim construction. I mean, it's literally undisputed, but it's not agreed to. That's correct. They have no response. And so this is something that, and I think it's plain from reading the board's decision, that the board was pointing to disclosure regarding displaying information now or displaying the same set of data later. That's not what the claims require. So that merits vacating that aspect of the decision and remanding for consideration under the proper construction and consideration limited to the evidence that's cited in the petition. Now there's a second issue with respect to the display limitation, and that's that it's likewise undisputed that the board interpreted Mahajan in a way that was never proposed by either party. Mahajan has a discrete multi-user embodiment involving a pitcher, catcher, and host hardware components. And in that embodiment, the catcher and the host are discrete physical devices. Mahajan describes them as a laptop and a wireless receiver that are connected via a serial cable. Petitioner never asserted that the catcher and the host could be contained in a single cell phone or PDA. The first time anyone heard that was in the board's final written decision. It was improper for the board to apply a new theory in the final written decision. So at minimum, that aspect of the decision should also be vacated and remanded, so that BLAST has an opportunity to address it with briefing and evidence, including expert testimony. But more importantly, the board's conclusion on that point is plainly incorrect, as it is irreconcilable with Mahajan's express description of the catcher and the host as two different physical devices. We see that in, for example, paragraph 75 of Mahajan. How does that affect the result if we were to conclude that these other references in paragraph 63 and 66, for example, disclose this claim limitation? I agree that if the court were to find the disclosure in paragraph 63 and 66, which again were analyzed under an improper claim construction and don't get to the specific display that's recited, but if the court were to disagree with us on that point, then the pitcher, catcher, host doesn't change that conclusion. They're really two separate issues. Now, those two issues aren't the only errors that the board made with respect to the display limitation, but just considering those issues, which again we say are undisputed, it demonstrates that the decision should be vacated and remanded. Are there errors with respect to the claim limitation about display? What are the other errors? I think, as we pointed out, in particular, the post hoc rationalization, those are some of the problems. The fact that the board was reaching conclusions about the priority beyond just the cell phone and PDA issue on the multi-user embodiment, the board reached conclusions that were not really laid out in the petition in any way because, again, the petition really just presented a number of string sites without any explanation. So there were a lot of problems, but I think at this point it's been distilled down to two undisputed issues that are dispositive. Unless there are any other questions on the display limitation, I'll turn to the memory limitation. The board's errors with respect to the motion capture hardware element provide a second independent basis for remand. Here, the issue is one of motivation to combine. Simply put, neither the petitioner nor the board ever explained why a skilled artisan would have modified the motion capture device described in Mahajan by adding separate memory hardware. Well, they say that there's an advantage of avoiding the need for radio transmission. But that's – I'm not sure that they actually do say that. The director might say it, but I'm not sure that that was ever presented. No, I think it's there in the decision. That's also inconsistent, though, with – I'm sorry. Did you want to point to an aspect? Well, go ahead. I'm not finding the reference right now. I think they said – they did say – I mean, they said something about, what is it, 22 and 23 or something of the appendix. And I think your point was, since the claim requires the radio, you can't get to the claim by saying who needs the radio. Exactly. The claim requires wireless transmission. The claim requires that the motion capture device include both a memory and a radio. And not only that, but when you look to Mahajan, Mahajan clearly says that what we are doing is providing real-time transmission using a radio. Doesn't Mahajan incorporate Li by reference, and Li does show memory? Mahajan does say that it incorporates Li by reference. And Li discloses the memory you're talking about. That's correct. What Li discloses – Well, what's – how much motivation does one require? I mean, it's already there, right? Well, what Li discloses is a prior motion capture device that includes a microcontroller and a memory, but no radio. What Mahajan does is look to Li, say, that's the old way of doing it. Here are some drawbacks. It presents drawbacks. That's undisputed by the experts in the case. And then it says, here's a better way of doing it. And the better way of doing it includes a microcontroller and a radio, but no memory. So there's no disclosure. But why wouldn't it proceed to get the memory in Li and just bring it over to Mahajan and combine it? Respectfully, that's not our burden to answer that question. That was Petitioner's burden to present the case why somebody would have done it. And that's simply nowhere to be found in the record. So we actually did present evidence to explain why a person of ordinary skill in the art would not have done it. But I want to make sure that I'm being clear that Petitioner was the one who had to explain why it would have happened, and that is completely lacking in the record. But as far as why a person – They relied on Li, didn't they, the incorporation of Li? Correct, but all that is is disclosure of a motion capture device using microcontroller and a memory. There is absolutely no explanation anywhere. So what's your argument, that there is no motivation to combine or there's motivation to combine, but it was just not put forward in sufficient terms? I don't know that I can separate those two. The argument is that the record in the IPR where Petitioner had the burden doesn't present any motivation to combine. So you're saying that Petitioner did not meet the burden to motivation to combine? Absolutely. But as I was going to say, we went beyond that. It was not our burden to prove that someone would not have added memory to the Mahajan device, but we did present evidence on that point. But you agreed that the board said that those arguments that you made about the disadvantages weren't sufficient, right? Well, but the board didn't even consider one of the two categories of evidence that we presented. We presented both evidence regarding design considerations, saying that these motion capture devices need to be as streamlined and unobtrusive as possible, and that would lead a person of ordinary skill in the art away from adding memory where it's not really relevant to what Mahajan is doing with its real-time transmission. So the design considerations that are unique to these types of devices was one category of evidence, and the board did address it, but it was addressed in a very flawed fashion, following the same logic that we find in Polaris v. Arctic Cat, and there's no way that can stand up. Well, Polaris seems to me somewhat different in the sense that the subjective preference theory was used in Polaris to address a teaching away argument and to dismiss a teaching away argument. We don't have a teaching away argument here, right? Well, but we actually... Is that correct? We argued that it could be considered teaching away. I would not say that's correct. I think the board is... Where do you argue in your brief on this teaching away? We can get you to that site. In the meantime, I see I'm running low on time. I just wanted to point out that we also presented a separate second category of evidence as to why a person of ordinary skill in the art would not have done this, and that goes to the fact that it would not have improved the functionality of the Mahajan real-time transmission device. That's addressed in a footnote on page seven, I believe, of our reply brief. The board never addressed that evidence at all. Okay. Well, we'll give you two minutes for rebuttal. Okay. Thank you. I'll have that site in a moment. Okay, Ms. Stewart. Good morning. May it please the court. I think what we have here with Mahajan is virtually an anticipation reference, and I think out of an abundance of caution, what the petitioner and the board were trying to do is say, well, if we don't find a literal teaching here because we have it so close, where would we look? And starting with... And we agree. There are basically three elements in Mahajan, but starting with the general system, it says we don't really need an onboard memory because we do this real-time wireless transmission, but then it incorporates Levi reference, which has the onboard memory. And then it points out in its third embodiment, we can modify our sensor to add storage. Does that mean it's all right in the reference between the incorporation of Lee and also the reference to the third embodiment? And in terms of a motivation, that third embodiment, which is called the body motion capture embodiment, says that you'd add the memory for storage of data. What are you pointing to specifically in Mahajan? That's paragraph 127, Your Honor, and that was pointed to in the petition at APPX0320. And that was also referenced in the expert declarations, and I think that in and of itself states the rationale and is a sufficient rationale for the combination. And additionally, we don't see Mahajan as discrediting Lee's use of memory. We see Mahajan as complementing Lee's use of memory. And if you look at Lee and the experts for both parties talk about this, Lee says, you know, you might lose your connection. You might have a signal. You might be transmitting a signal, but maybe the club gets too far from the receiver and you lose your connection. And so it would be helpful, you know, kind of as a backup to have this data storage feature. So, frankly, we think really there's an explicit teaching here in the embodiment itself, but there's certainly other teachings and a sufficient motivation to combine in the view of the director. And this is all independent of the borrowing of some of the Polaris language that we disapproved. Yes. In our review of Polaris. Yes. And as your honors pointed out, in that it was really a different situation because they hadn't really established a strong prima facie case because you had this safety issue. So, you know, placing a gas tank under a seat in an SUV or an ATV and raising it up and creating instability problems is far different than what we have here, which is really a teaching of different options. My recollection in Polaris, and you can correct me if I'm wrong about this, is the problem there was that the board didn't analyze the advantages or disadvantages of having the fuel tank where it was. It just says, you know, this is a subjective preference. Yes. Yes. In fact, in Polaris, there wasn't even a separate analysis of those claims. They just incorporated by reference and analysis of other claims and said for the same reasons, you know, it would be obvious here as well. So the Polaris decision was lacking in many respects. And as your honor pointed out, the court found that they failed to consider teaching way at all. And they wholly regarded, wholly disregarded other teachings and that reference, which would have taught away. So we think it's distinguishable from the case here. But in terms of the rebuttal evidence, the board did consider the rebuttal evidence. It considered, you know, the weight limitations that the inventor was attempting to achieve, trying to keep it light, but also considering the flexibility of even with a small and light apparatus of having different functions. So that was considered by the board. And in terms of the board never considering the fact that it wouldn't be necessary, the board addressed this argument of, you know, whether or not a feature is necessary, doesn't really go to the fact of whether it would be obvious to combine and it's not really a teaching away. Turning next, if your honors have no more questions on memory to the display limitation, which is the other limitation and dispute. We do feel that there is a claim construction. There's kind of a hidden claim construction issue here, which is do you have to have the real-time data and the previously stored data displayed at the same time? Frankly, I think the office is a little bit confused about what blast's position is on that. And that is the reason why both the board and the office is presenting evidence under both constructions. So if you don't have to display the data at the same time, if it's the real-time data and at some point in time previously stored data, we have that explicitly in the reference. If they do have to be displayed at the same time, you have the multi-swing embodiment, which talks about looking at multiple pieces of data at the same time. Right, but display at the same time, simultaneous display, think split screen. They don't contend that there has to be a split screen so that you can actually compare them right next to each other. They do contend that on that screen, you have to be able to show data from two different time periods. Yes. Namely, the first of the multi-swings and the second of the multi-swings. Right, or data. Watch this, then watch this, then watch this. Let's go back to the first one. Right, and I think that's an even easier case, frankly, for the office to make. But paragraph 666 in Mahajan says that the transmitted information, and here they're talking about multiple swings from different golfers and necessarily at different times, are stored by the computer analysis and display system. So BLAST is saying, you know, the office is confusing analysis and display, but the system goes hand in hand. That's what's taught in paragraph 66. And also, whether it's a split screen or not in the multiple user embodiment, and now I'm looking at paragraph 77, Mahajan says that the instructor is looking at the data from the students at a single glance. So that means necessarily that data is being presented at the same time for the instructor. I think a point of dispute, if you start looking at the multiple user embodiment, is that it then lacks a separate feature required by the claims, which is that it's on a, you know, cell phone or some kind of wireless device that has a wireless receiver combined with a wireless analysis and display. And here is where we get into the dispute of, well, did the board come up with this theory for the first time? And that is not accurate. This issue, the relationship between paragraph 33 in Mahajan, which talks about the wireless transmission and the mobile device, and paragraph 75, which defines what the pitcher, the catcher, and the host are, this was a theme that was really discussed throughout the entire IPR proceedings. Sometimes paragraph 33 was discussed, and sometimes paragraph 75 was discussed, and sometimes they were discussed together. And that's really why the office makes the point to BLAST that if you have this issue with who brought it up when and was it raised in a sufficient manner before the board came to decision, bring that to the board in the first instance. Say that there's been a problem. You haven't had, you don't feel like you've had a sufficient opportunity to respond, but don't, you know, flag the problem and then bring it for the first time to this court, you know, to be discussed. Because what happened was the specific argument wasn't raised in the petition, but the patent owner then rebutted it. So the petitioner raised it in the response, and then it came up again in oral argument, and then it came up again in the slides that were presented at oral argument. So it's not surprising after this back and forth between the parties that the board's. I'm sorry, what do you mean by it wasn't presented in the petition, but the patent owner's response presented, I'm not sure what the point, the patent owner response is not going to be making the argument for the petitioner. Did the respondent, did the patent owner say something other than, and by the way, the petition hasn't argued the following. And really couldn't argue the following. Well, the patent owner said, you're lacking this feature, you're lacking the mobile device portion and the multi-user embodiment. And the petitioner came back in his reply in support of his petition, and he pointed to paragraph 75, the disputed paragraph. And then the proceedings continued. It's a lot more complicated than it needs to be. Well, it could be, Your Honor. But the point that we're trying to make, and I think the office is sensitive to it, that the board is not trying to make new arguments for the first time in the final written decision, that there was a back and forth throughout the proceedings that culminated in the board's decision on this issue. And if Your Honors have no more questions, we press on the briefs. Okay. Thank you, Ms. Stewart. Mr. Argenti, you have two minutes. With regard to the court's earlier question, asking whether we had addressed teaching away in our briefing, I would refer the court to pages 44 and 46 of our opening brief, and also pages six and seven of our reply brief. And an important point is where you refer to teaching away. Page 44, it's in the last few lines above the footnote, where we quote language that the board's analysis encouraged the fact finder to outright discard evidence relevant to both teaching away and whether a skilled artisan would have been motivated to combine references. So that goes to the point that I was going to make, that I don't think that's a quote from Polaris. That's not your argument. I think the argument is implicit in the quote, Your Honor. That's the best you've done. But, well, I would also refer to those other pages. But that is the best I have up here. But the important point that I was trying to make is that Polaris is not strictly about teaching away. And Polaris also recognizes that even if evidence doesn't rise to the level of teaching away, it can still be relevant to reasons that would be disadvantages of the combination. Reasons that would discourage a person of ordinary skill in the art from making them. Well, they addressed the disadvantages, right? I'm sorry? The board addressed the disadvantages. Again, the board improperly dismissed a portion of the disadvantages that we presented under the flawed Polaris analysis. There were disadvantages that we presented regarding the failure of the addition of memory to improve the functionality of Mahajan. That evidence was never addressed in the decision. And that evidence is cited in the footnote, I believe on page seven of our reply brief. Is that correct? That's an entire category of evidence that was not addressed. And that was just your reply brief, not in the blue brief. Okay. We may have mentioned it in the opening brief. I'm sure it's cited, including the underlying evidence in the reply brief, in that footnote. So where in the reply brief do you address teaching away? In the reply brief, I believe the relevant pages would be six and seven. But again, our argument is not strictly based on teaching away. Our argument is that there's evidence that the board didn't even consider whether it rose to the level of teaching away. We presented argument and evidence regarding disadvantages of the combination that a person of ordinary skill in the art would have recognized. And the board improperly dismissed some of it based on a flawed legal standard and didn't even address some of the rest of it. Okay. Thank you. Mr.